Wait just a minute and let everyone get settled. Okay, Mr. Martin. May it please the Court, my name is Scott Martin. I represent Mr. Escobar in this appeal of the 87-month sentence that he received upon his conviction for possession with intent to distribute marijuana. He raises two issues on appeal. First, he argues that the District Court abused his discretion by denying his request for a mitigating role adjustment under Guideline Section 3B1.2 without assessing his relative culpability in light of the factors listed in Application Note 3C of the Guideline Commentary. Second, he argues that contrary to the District Court's conclusion, his period of imprisonment for a prior burglary offense was too stale to receive criminal history points under Chapter 4 of the Guidelines. With the Court's permission, I will address these two issues in order. Under Guideline Section 3B1.2, a mitigating role adjustment is warranted if a defendant is substantially less culpable than the average participant in the criminal activity. In the District Court, Mr. Escobar argued that he should receive this adjustment because his role was, quote, limited to that of a courier and nothing else. He was working under the direction of other individuals and was merely being paid to drive the drugs from one location to another, end quote. He pointed out the factors in Application Note 3C that a court should consider and emphasized that under the application note, a person who does not have a proprietary interest in the criminal activity and is simply being paid to perform certain tasks should be considered for an adjustment. Judge Alvarez, who was the judge, responded that she would consider the request, and she ultimately denied it, saying, I do not think that it is warranted under the circumstances here. However, it's clear from her own words that her denial of this was essentially based on her preconceived idea that persons who are paid to transport drugs are always average participants. Specifically, she said, here's my real problem. The average participant is paid for their services, and that's really just the way it is. And the average participant is the person loading the drugs, packaging the drugs, moving the drugs, you know, storing the drugs. And it's our position that these words that she spoke are the best evidence of why she denied the mitigating role reduction here and her reasons to do it. The new guidelines, if you will, say that you should consider the relative culpability. So what do we know about the others involved in the scheme? What was their role and how does this person figure in that? How does Mr. Escobar figure in that? Okay, Your Honor, the evidence here, the PSR described Mr. Escobar's role in the offense as that of a transporter of a significant amount of marijuana. It said the defendant, Mr. Escobar, was to drive the load vehicle from a location near the river to another location. So this was near a levee by the river. Mr. Escobar admitted at rearrangement that he had intended to deliver this marijuana to another individual. And at the time of the arrest, the PSR indicated that there were others present. The Border Patrol agent saw several more individuals in the brush yelling things in Spanish. And when the agent drew his taser and ordered Escobar to show his hands, apparently he said something like, we are waiting for you in here. Also, at the same hearing, his supervised release in an earlier case was based on an allegation that this was some kind of a conspiracy. So there were others involved. And now the government, in its brief, has conceded that his conspirators placed into his possession a large quantity of marijuana for movement into the United States. So our position is that the evidence here, it's at least debatable whether these mitigating role facts are at least debatable. And they're as much or more than the facts in Sanchez-Villareal. But if they're debatable, don't we defer to the district court? Well, Your Honor, our position is that the judge's approach, Judge Alvarez's approach here, just as it was in Sanchez-Villareal, essentially pretermitted application of the guideline. She didn't give the consideration of the factors that are under Application Note 3C. The PSR addendum did not do any analysis of relative culpability and no comparative analysis whatsoever, and that there's insufficient factual basis for denying the adjustment. It's basically like a Melton error, the case Melton that we cited in our briefs. So what we're asking from this court is simply on this issue, simply a remand for further proceedings as the wisest course of action, which was the remedy in Sanchez-Villareal. We'd like the court to make findings regarding the average participant and assess Mr. Escobar's relative culpability in light of those factors. That's all we're asking for Issue 1, Your Honor. If I may, I'd like to address the second issue now regarding the staleness of the period of imprisonment for the prior burglary offense. In determining criminal history category, a court must count any prior sentence exceeding one year and one month that resulted in the defendant being incarcerated within 15 years of the commencement of the incident defense. If parole was granted but then revoked and the defendant received a parole revocation sentence that includes a term of imprisonment, that's under 4A1.2k1, then the date of the last release from incarceration on such sentence determines whether the conviction falls within the 15-year period. Okay, so we have this kind of messy timing with him and kind of a messy situation. So it looks to me like his parole was revoked on January 5th. He was not transferred to federal custody until January 26th. So at least for those three weeks, isn't the only thing he's in prison for the parole revocation? Okay, so let's back up. Okay, so his first revocation was sometime between 1998 and 1999. We know that from the PSR because basically he was paroled in 1998. And then he was arrested. Basically, they filed a parole violator's warrant. He was arrested. Then his parole was revoked and he was placed in jail for a short period of time. He was then released to Hathaway House. He was paroled to Hathaway House on July 13th, 1999, and that's what we contain as his date of last release from custody on the 1991 burglary offense. He then after that absconded from the Hathaway House a couple days later. And in the meantime, a parole violator's warrant. He was found in the Hidalgo County Jail in October of 2000. And that's when he was—a parole violator's warrant. That's a parole from the original offense. Yes, yes, but it wasn't— Okay, the parole violator, there's not some other offense. It's this one. It's this one. It's the 91 one. 91, yes. All right, go ahead. From October 2000 basically until his—until January of 2001. He's in state custody, and he's been arrested on a parole violator's warrant. But our position is that that doesn't count as a term of imprisonment. But then it's revoked on January 5th. Do you have a case like this where—not that he was arrested and found not guilty or arrested and then released and never found anything, but where he's arrested, put in prison, revoked, stays in prison, and only then is transferred, and the revoked and stays in prison is within the 15 years? Do you have a case like that that was—that's not good enough? The closest case I have is Gallavez. It was a Sixth Circuit case where he was being held for a parole revocation hearing in Michigan, and he ultimately was not revoked, but the analysis there applies equally here because there wasn't any kind of revocation or incarceration imposed upon revocation. Basically, the state authorities never punished him for this parole violation. And our argument is the same here, is that under 4A1.2K, which talks about term of imprisonment imposed upon revocation, that means that a penalty for the revocation was imposed. In our case, yes, he was revoked, but he was discharged and released from state custody to a federal detainer. Three weeks later, he was revoked on January 5th. He was released on January 26th to federal custody. That's three weeks. What are those three weeks? That's what I started with. The question I started with that I don't believe has yet been answered. Well, I have that he is—I'm sorry. Are you getting that from the PSR? Or I have it that he was discharged—at which time, on January 5th, he was discharged and released. Well— I'm sorry. Let me check. It's my understanding he was revoked on the 5th and transferred to federal custody on the 26th, and he was not released on January 5th. He was discharged from parole on January 5th, and he was being held— He was imprisoned in state custody after revocation for three weeks. Sure. He was being held on a detainer, a federal detainer. It was an imprisonment imposed for the parole violation on the 91 offense. Where does it say that? In the—it says in the PSR addendum, for example, it says— Okay, it says, although the defendant's parole was to discharge on December 2nd, 2000, a parole violator's warrant remained active and the defendant remained in state custody until his parole was revoked on January 5th, 2001, at which time he was discharged and released from state custody to a federal detainer. Okay, that's what the PSR addendum says. The PSR says January 5th, 2001, parole revoked, discharged, and released to federal custody. So, yeah, he was ritted over to federal custody a couple weeks later, but he was basically being held for the carjacking, the federal carjacking offense. But basically, at that time, he was already off parole on the 91 offense, the burglary offense, and so the time that he spent—our position is that all this time, the time from October 2000 when he was found in Hidalgo County and he was arrested— he was already in the jail, but he was technically arrested on a parole violator's warrant. All that time from October 2000 to whenever he was ritted over to federal court, that was not imprisonment opposed upon revocation of parole in the 91 burglary case. So we're looking at the language of 4A1.2K1 and saying that this time should not apply. And again, the reasoning of the Sixth Circuit in Galavez is persuasive here, and to the extent that the court would find that the language of the guideline is ambiguous, which we don't think it is, but if this court were to find that, we would urge this court to apply the rule of lenity and say that the guidelines should be interpreted in the way that we're suggesting. Unless the court has any questions, I'll yield the remainder of my time to rebuttal. Yes, you've saved time for rebuttal. Thank you, Mr. Martin. Mr. Pardue? May it please the court, Eric Pardue on behalf of the United States. I'll go straight into the second issue because I think that may be causing a little more. Well, and I'd like your answer to what we should do with those three weeks that he was in state custody following the revocation. So that's not actually in the PSR addendum. What happens is Judge Alvarez, during the sentencing hearing, notes that she went back and pulled the docket sheet for that, his carjacking conviction, and it says, she notes that he was ritted over to federal custody on January 26th. So that three weeks in between, he was in state custody. I don't think it's clear, but I would also make... Did she find that he was in state custody pursuant to the parole revocation, or was it unclear? I mean, in other words, we have three weeks that he's in custody after the parole revocation, state custody. I'm wondering how we treat those, whether we treat that as continued incarceration on the parole revocation for purposes of the 15 years or that we treat it as a nothing. I don't think Judge Alvarez made an explicit finding about that, but I also don't think that necessarily matters because what is the key here and what separates this case from, say, the Stewart case that Mr. Escobar cites in his reply brief and the Galavis case is that here Mr. Escobar's state parole was actually revoked. And Stewart and in Galavis... But he's saying you have to be in prison on revocation, which is why I'm asking about the three weeks. And I think that's where the mistake may be coming in, is that this notion upon revocation, which comes from the Stewart case, is not a temporal limitation on it. So in United States v. Miller, a Fourth Circuit case that comes after Stewart, and that's 495 Federal Appendix 376, the Fourth Circuit says that basically a time-served sentence on a revocation, which would be essentially what you have here in January of 2001, the Texas court revokes his parole. He's been in custody since October. Rather than imposing a new term of imprisonment, knowing that he's about to go on to a federal detainer or is under a federal detainer about to go into federal custody for the carjacking, just time served for that period you've been here. That period from October to January 2001... That's what we should consider in your opinion. It's the easier way to do it, I think, even in addition to that three weeks. Because once the state court revokes Mr. Escobar's parole the second time, I think you've gone beyond Stewart, you've gone beyond Galavis, and you have a situation where that period where he is incarcerated, pending that revocation period, is not just a period of incarceration for administrative purposes. Once it's revoked, that is a period, part of the imprisonment, part of the sentence or the punishment for that actual revocation. Here you don't have to have a period of imprisonment after the revocation. Miller says that's not necessarily the case. The use of upon and upon revocation is just there has to be some form of sentence and actually some revocation. So upon revocation indicating that there is actually a revocation, not just that the defendant has been held pending a revocation hearing or being held based only on allegations that there is some basis to revoke his parole. So in that regard, my submission would be that it's the 2001, the actual revocation. The fact that there is a revocation is what seriously matters, and whether it's the three weeks after that revocation or the, I guess, two and a half. What if he was revoked but never in custody? Then we wouldn't have this period of time when he would be in custody anyway. So the key is he's in custody, he's revoked at some point, whether the revocation is after or before the custody, as long as custody and revocation happen within the 15 years, we're good. That's your argument. I think that kind of sums it up. We don't have to get into the issue of the halfway house and whether or not that qualifies because it's that subsequent revocation that means that the release to the halfway house, which even itself occurred outside of the 15 years. Was he incarcerated at any time within the 15 years with a 1991 burglary? Yes, Your Honor. From October of 2002. And the event you point to is what? I didn't hear the first part of that. The event that you point to, the day of his incarceration, you argue that occurred within the 15-year period. The entire period between October of 2000 and January of 2006 of 2001 when he is written over to federal custody is all period where he is in state custody upon revocation of his parole, and that's within 15 years of the July of 2015. I understand that. I just want to be precise about the event that you point to. Unless there are any other questions on the second issue, I'll switch over to the mitigating rule adjustment. And here I think it's quite clear that the district court did not commit clear error in denying Mr. Escobar's request for a mitigating rule adjustment. Well, if we don't know, if the whole idea of the mitigating rule is comparing it to the other people involved in the offense, don't we need some analysis of that by the court in order to assess whether it's correct? Well, two things. One, I want to reiterate that a mitigating rule adjustment is the defendant's burden of proof to show by preponderance of the evidence, and this court in Castro said that it's the defendant who has to show the culpability of the average participant and then how his or her culpability is comparatively and substantially less than that average. Because it's a reduction of burdens on the defendant. There's also the point that in the addendum to the PSR, the probation officer said there is insufficient information to determine the number of participants involved in the venture or the culpability of those other defendants. The district court adopted the PSR, so within that the district court is saying, look, Mr. Escobar, you haven't satisfied the first prong of that Castro test for finding a 3B1.2 mitigating rule adjustment because there's absolutely no evidence in the record with which I, the district judge, can determine what the average culpability is of the average participant to make that relativity determination. So within that, I don't think it's clearly erroneous for the district court to do that based on the record here. More importantly, there's really nothing in the record that would suggest that he is even entitled to a mitigating rule adjustment. This court reiterated in Sanchez v. Orell that when the record permits only one resolution of a factual issue, there's no need to demand. Here, Mr. Escobar has really presented no basis for how his activity or his participation is significantly less culpable than the average participant. Well, what does the record show about what his activity was? Irrespective of what wasn't put in the record, what does the record show? Really all we have is that he was caught transporting drugs or the quantity of controlled substance in his vehicle. He was the only one that was caught. There are, in addition to just being, this isn't a situation where he is just a carrier. Not only was he a carrier, he actively fled, he resisted arrest, and as the government pointed out repeatedly in its brief, as he was resisting arrest and injuring an officer, he mentioned, because the officer heard other people in the vicinity speaking in Spanish, Mr. Escobar say, come get us in here, which suggests that he had some kind of leadership role itself over those other people around him, whoever they may be. They knew who he was and they were expecting him for some reason. Presumably, yes. It's unclear whether those are persons connected to the drug trafficking itself or just happened to be. He knew people in the area. The record doesn't reflect that, which goes back to the fact that as far as developing a record for a mitigating role adjustment, Mr. Escobar has presented nothing to show who else in this criminal activity he could be compared to. The district court makes that factual finding by adopting the PSR. That was not clearly erroneous because it's perfectly plausible in light of this record. On that basis alone, this court confirmed that denial. I also think this case is not like Sanchez v. Orell because here the district judge never based the 3B1.2 determination on whether or not he was critical to completing the offense. That was the issue in Sanchez v. Orell where Judge Alvarez had mentioned that it was the defendant's critical role, and that seemed to be dispositive or determinative of whether or not the 3B1.2 reduction was granted. Also, the mitigating role facts were quite debatable. This court emphasized that and decided to remand in that case. Here there really are no other facts that would stand or support mitigation.  Which itself sounds like a per se rule of the courier should always get it. Amendment 794 does not say that. It only says they should be considered. The district judge said the guidelines say that I should consider that. I am considering that based on all these. What about her long speech about how she didn't like the guidelines? What do we do with that? I don't think you can penalize the judge for perhaps editorializing on the record, but I don't think it's something that affected the outcome here. She also notes after saying that that there is a lot of other concerns that the court has with Mr. Escobar in particular. He gets out of prison and he walks right into a drug deal, essentially. This is not a situation where there is no discussion of that, both within the PSR and on the record. She does not say this isn't a case like Sanchez v. Arreola where the court says you were critical, therefore I can't give you this. That never comes up. This case just is not like Sanchez v. Arreola. Because the district court did not make clear error in denying the 3B1.2 mitigating rule adjustment, the government would not be able to do that. I ask that you affirm unless there are any further questions. All right. Thank you, Mr. Perdue. Mr. Martin, you saved time for rebuttal. I have a few points to make, Your Honor. First on this second issue, the issue regarding the criminal history points, the government's position that all of this time from October of 2000 until January of 2001 when he was routed over to federal custody, that all counts. It all depends on this notion that this was somehow a revocation sentence. In fact— He said it was part of the punishment for the revocation. Yes, Your Honor. You have to accept that to accept the— Just an administrative detention for some reason. Right. That's their position. But the PSR, and there's nowhere in the PSR or anywhere else that says that he received a sentence other than a discharge and released a federal detainer when he was revoked. So this time that he spent was like pretrial custody. He was also being held on other— You get time served. Isn't that time served? I mean, so if Mr. X is arrested and put in jail for eight months and then is convicted and gets time served, did he have an eight-month sentence or not? My point is that he did not get a time served sentence. He got a discharge. Time served would be a sentence of imprisonment, like we sentenced you to the time you've already served. Here, you're discharged. You're past your maximum parole discharge date, which was December 2, 2000. You're being held on these federal carjacking allegations, which was the reason why he was in Hidalgo County in the first place. It was because he had committed a string of carjacking offenses. So they weren't just holding him for this revocation hearing. They were holding him because they were getting ready to prosecute him in federal court, which is what ultimately happened. So he gets ridded over to federal court for the carjacking, and he just gets discharged for the parole violation. And our position is that's not a revocation sentence. It's not punishment for the 91 burglary offense. And the whole reason that under 4A1.1 we count, it's focused on sentences, punishments for offenses, so that the federal court doesn't have to go and try to measure the severity of various offenses. You look at what imprisonment was imposed, and we say that it's unfair here when the state authorities did not see fit to actually punish him for this parole violation, that he should be getting criminal history points in this case. Your Honors, on the first point regarding the mitigating role, the government has pointed out that the PSR addendum said that there is insufficient information about the other participants and so on and so forth. But as I said when I stood up here earlier, these facts are very similar to the facts in Sanchez v. Arreal, which this court found to be debatable mitigating role facts. She clearly considered that. And, I mean, the fact she did say I don't like, you know, I think the Guidelines Commission is a little out of whack here. However, I know I'm supposed to consider it, so I will. And why isn't that okay? I mean, this happens. You don't like what a higher court does, for example. You don't like what Congress has done. Maybe you shouldn't say anything as a judge, but you do. But then you go, you know, I'm bound to follow this. So the fact that I don't like what, you know, the court above me did or what Congress did or what the guidelines did, I'm still going to follow it. Isn't that all we can ask of a judge? I don't have to like everything they did. I have two responses. The first is that she said I will consider it. She was saying I will consider the request. Our interpretation of this is she wasn't saying I'll consider the factors in Application Note 3C. Do we have to decide what it means? Well, she clarifies, I will consider it, and any request made of the court, I do consider it. And then later she says I'll consider the request. So, I mean, I think it's – I don't see any evidence here that she actually considered these factors. The PSR certainly didn't get into them. Nowhere was there any analysis of these factors, unlike in a case like Castro where it was a recent case where there was a comparative analysis in the PSR addendum, which the district court adopted. But if it's your burden of proof to put on the evidence of the comparators, then that's not on her for having not considered whatever you didn't put on. Well, we're saying, Your Honor, that her approach pretermitted application of the guideline, that she didn't make – didn't consider the factors at all. So we're asking for – I can't fault her for not considering evidence you didn't present that you were required to present, is my point. Well, Your Honor, again, our position is that the evidence that is in the record is sufficient. It makes it debatable, as it was in Sanchez-Villareal. As I pointed out, the PSR said he was a transporter driving the vehicle from one location to another, was going to distribute to another individual. That's what he admitted at rearrangement, that he was going to transfer to another individual. There were other people in the brush. And also now the government has said in its brief that his conspirators placed into his possession a large quantity of marijuana for movement into the United States. So – and everybody at the hearing understood that he was being paid. So our position is that it is – the facts here are at least as debatable as they were in Sanchez-Villareal, that there are these other people. There are people paying him. He was just transporting it. He was going to give it to somebody else. Mr. Sanchez-Villareal was going to do the same. He was transporting it for some guy with a nickname. That's all they knew. He had a nickname, and he was going to transport it to an unknown individual at a convenience store, and the court found that's debatable, mitigating all facts. And I see my time is up, and if there are no more questions, I'll – Thank you, Mr. Martin. Thank you. The case is under submission, and the court will take a brief recess.